IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

DANIEL A. CHAPPELL, JR.                                        PETITIONER

V.                              No.  5:11-CV-05141-JLH

RAY HOBBS, Director
Arkansas Department of Correction                             RESPONDENT

Magistrate Judge's Report & Recommendation

Before the undersigned is the petitioner's Habeas Corpus Petitions (ECF No. 1) filed June

10, 2011 under 28 U.S.C. §2254.  The State filed its Response (ECF No. 10) on July 28, 2011

and an Evidentiary Hearing was conducted on May 31, 2012

**I. Background**

As a result of an investigation by the Fayetteville Police Department on August 12, 2007

the Petitioner was arrested by the Fayetteville Police Department on a Warrant on August 13,

2007. (PSR ¶ 18-20). On August 16, 2007, the Petitioner was charged by a Felony Information in

the Circuit Court of Washington County with Count 1: Rape, Count 2: Computer Exploitation of

a Child, Count 3: Distributing, Possessing, or Viewing a Matter Depicting Sexually Explicit

Conduct Involving a Child; and Count 4: Possession of Methamphetamine. (ECF No. 10-1).

On August 26, 2007, a criminal complaint was filed in Federal Court alleging that the

Petitioner did on May 26, 2007 "employ, use, persuade, induce, entice or coerce any minor to

engage in any sexually explicit conduct for the purpose of producing any visual depiction of such

conduct, if that conduct was produced using materials that have been mailed, shipped, or

-1-

transported in interstate or foreign commerce by any means. (See 5:07-cr-50074; ECF No. 1)

On September 26, 2007, a nine count Indictment was handed down against the Petitioner in which Counts 1-7 charge the Petitioner on various dates with inducing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C.A. §2251(a). He was also charge in Counts 8-9 with being a person, having custody or control of a minor, induced the minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct in violation of 18 U.S.C.A. §2251(b).

On November 6, 2007, the Petitioner entered into a plea agreement to plea guilty to Count 7 and Count 8 on the Federal Indictment and the Government would dismiss Counts 1-6 and Count 9 (5:07-cr-50074, ECF No. 16). The Petitioner entered his plea on November 13, 2007. After many continuances a Presentence Investigation Report (PSR) was initially prepared on June 25, 2008, revised on September 11, 2008 and September 15, 2008 and ultimately filed on November 13, 2008 (Id.) when a sentencing hearing was conducted.

The Petitioner's offense level was enhanced by 8 points because the offense involved a sexual act and portrayed acts of violence. (PSR, ¶ 41-42). On November 13, 2008, the court entered Judgment finding the Petitioner Guilty of Counts 7 & 8 and sentencing him to 360 months on each count to run consecutively (Id., ECF No. 20) for a total of 720 months.

Four days later, on November 17, 2008, in State Court the Petitioner executed a Plea Questionnaire acknowledging that for a plea of guilty to the charge of Rape he would receive "20 yrs ADC, concurrent w/Fed. Case #" (See ECF No. 2, pp. 6-7). The sentencing dialogue before the Washington County Circuit Judge made it clear that the state court sentence was to be

concurrent with the Federal sentence (ECF No. 10-6, p. 4) but when the circuit judge sentenced the Petitioner no reference was made to running his time concurrent (Id. pp. 4-5)  An "Amended Judgment" was entered on November 17, 2008 indicating that the time "is to run concurrent with his time served on federal charges arising out of the same facts." (ECF No. 10-7, p. 2).

The Petitioner was transported to the Arkansas Department of Corrections and the United States Marshal's Service lodged a Detainer against the Petitioner at the Arkansas Department of Correction on January 21, 2009 (See ECF No. 2, p. 5).  The Petitioner  contacted his attorney who wrote to him on February 17, 2009 and acknowledged that "It was our intent to see that you served your time in the Federal Institution." (See ECF No. 2, p. 20).  As a result a Second Amended Judgment was entered by the Washington County Circuit Judge on February 20, 2009 which provided that the 240 months were "to be served at federal penitentiary." (ECF No. 10-8, p. 2).

On March 6, 2009, the Petitioner then filed an action under 42 U.S.C. § 1983 against his attorney, the deputy prosecuting attorney and the Washington County Circuit Judge (See 5:09-cv-5046; ECF No. 1) which was dismissed on July 8, 2009 (Id., ECF No. 7).

On March 27, 2009, the Petitioner filed a Rule 37.1 motion claiming Ineffective Assistance of Counsel (ECF No. 10-9) based upon the facts alleged in the current habeas petition. The Rule 37 Petition was denied by the circuit judge on April 14, 2009 (ECF No. 10-10).

In July 2009 the Plaintiff was informed by the U.S. Marshals Service that if the state has "original or primary jurisdiction over an inmate, then the inmate must conclude the state sentence PRIOR to incarceration within the federal system." (See ECF No. 2, p. 22).

In March 2010 the Petitioner filed a Habeas Corpus action in the Circuit Court of Jackson

County which was denied. The Arkansas Supreme Court, on May 12, 2011, upheld the Jackson County Circuit court denial of Habeas Relief because, inter alia, the Petitioner was no longer under the jurisdiction of the Jackson County Circuit Court. (ECF No. 2, pp. 18-19).

The Petitioner filed the current Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on June 10, 2011 and alleged: 1) Involuntary Plea; 2) Invalid Judgment and Commitment Order: 3) Ineffective Assistance of Counsel; and 4) Violation of the Plea Agreement (ECF No. 1, P. 4-5).

## II.  Testimony

The testimony of the Witnesses is set for in the Summary of Testimony attached hereto and made a part hereof.

## III.  Discussion

Section 2254 of Title 28 of the U.S. Code provides in part that (a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.  The court will first address each of the grounds asserted by the Petitioner.

### A.  Grounds Asserted

#### 1.  Involuntary Plea

At issue in the present case is the Voluntariness of the Petitioner Plea to one count of Rape in the Washington County Circuit Court on November 17, 2008.  To be constitutionally valid, a guilty plea must be knowing, voluntary, and intelligent, and because a guilty plea constitutes a waiver of various constitutional rights, it must be made with sufficient awareness of

-4-

relevant circumstances and likely consequences. *See, e.g., United States v. Martinez-Cruz*, 186 F.3d 1102, 1104 (8th Cir. 1999).

Michael Parks, a detective at the time with the Fayetteville police department testified that he arrested the Petitioner August 13, 2007 on probable cause on the four charges set forth in the information filed August 16, 2007. The Petitioner was charged by a Felony Information in the Circuit Court of Washington County with Count 1: Rape, Count 2: Computer Exploitation of a Child, Count 3: Distributing, Possessing, or Viewing a Matter Depicting Sexually Explicit Conduct Involving a Child; and Count 4: Possession of Methamphetamine. (ECF No. 10-1).  The case against the Petitioner was exceptionally strong, with video documentation of the rape, statements by the Defendant and statements by the victim.

Parks testified that he knew the Defendant would get substantially more time on the child pornography charges in federal court than state court so he contacted Jeff Shields, a federal investigation.  A federal indictment was returned on September 26, 2007, the Petitioner entered a plea to one count of Production of Child Pornography and one court of being a legal guardian and Producing Child Pornography. The State of Arkansas retained the Rape charge.

The testimony from the Petitioner, his attorney and the deputy prosecuting attorney is undisputed that the state case was continued multiple times (nine), over a year, to allow the Petitioner to be sentenced in federal court first so that he would serve his time concurrently and in a federal facility.

The Petitioner was finally sentenced on his federal child pornography charges on November 13, 2007 and was sentenced to 360 months on each count.  The sentences were run consecutively for a total sentence of 720 months.

Within several days of being sentenced in federal court they Petitioner was visited by his attorney on a Sunday evening and was informed that the State of Arkansas was willing to plea his state rape charge to 20 years in ADC concurrent with his federal sentence. The Petitioner appeared the next day in Washington County Circuit Court and entered a plea of guilty to one count of rape.  The following dialogue occurred between the court and the deputy prosecuting attorney:

THE COURT:     What's the State recommending?

MR. LAMB:      Your Honor, the State's recommendation is 240 months in the Arkansas Department of Correction, that time to run concurrent with the federal time.  He received charges arising out of the same facts.  There is no suspended time.

Mr. Lamb testified at the hearing that the strategy of Mr. Paddock was to continue the state case until the Petitioner plead in state court so he would serve his time in a federal facility. Mr. Lamb acknowledged that it was always everyone's understanding that the state time would run concurrent with the federal time and that he would serve his sentence in a federal facility and that the 720 months on the federal charges were more than sufficient for the state charge.

Mr. Paddock testified that he had "hoped" that the Petitioner would serve his time in a federal facility if his time was concurrent.  Mr. Paddock acknowledged that there was no admonition on the record that the Petitioner might not serve his time in a federal facility or that the sentences might not be concurrent.

It is clear that this was the state court's intention as well because the Amended Judgment calls for the time to be concurrent and the 2nd Amended Judgment calls for the time to be served

"at federal penitentiary". The plea agreement, the judgments, and everyone's testimony make it clear that the state court's sentence of 240 months was to be concurrent with the Petitioner's federal time and that the Petitioner was to serve his time in a federal facility.  What all of the parties did not know is that it was impossible to fulfill this plea agreement since the state was the first to acquire custody.

Under 18 U.S.C. s 3568 a federal sentence does not commence until a defendant is received in federal custody *Greathouse v.* U.S. 548 F.2d 225, 227 (C.A.Mo. 1977).  18 U.S.C. § 3568 provides, in part: The sentence of imprisonment of any person convicted of an offense shall commence to run from the date on which such person is received at the penitentiary, reformatory, or jail for service of such sentence.

Since the Defendant was first arrested by state authorities, his presence in the United States District Court was secured through a writ of habeas corpus ad prosequendum, and following his sentencing, he was returned to state custody.

When two separate sovereigns exercise jurisdiction over the same person during the same time period, "primary jurisdiction  ... is generally determined by which one first obtains custody of, or arrests, the person." *See U.S. v. Hayes*  535 F.3d 907, 908 (C.A.8 (Mo.),2008) citing *United States v. Cole*, 416 F.3d 894, 897 (8th Cir.2005) ("As between the state and federal sovereigns, primary jurisdiction over a person is generally determined by which one first obtains custody of, or arrests, the person."); *United States v. Dowdle*, 217 F.3d 610, 611 (8th Cir.2000) (per curiam) (when the state firsts arrests a defendant it retains primary jurisdiction).

The controlling factor is "actual physical custody" of the accused. *United States v. Cole*,

*Id.* Primary jurisdiction continues until the first sovereign "relinquishes its priority in some way," through release on bail, dismissal of charges, parole, or expiration of sentence. Id. If, while under the primary jurisdiction of one sovereign, the accused is transferred to the other's jurisdiction to face a charge, "primary jurisdiction is not lost but rather the defendant is considered to be 'on loan' to the other sovereign." Id. at 896-97.

Issuance of a writ of habeas corpus ad prosequendum, which is used to obtain custody of a defendant so that he can be prosecuted in the proper jurisdiction, does not alter a defendant's custody status, but merely constitutes a temporary change in the location of his custody. *Munz v. Michael*, 28 F.3d 795, 798 & n. 3 (8th Cir.1994). *See also Ruggiano v. Reish*, 307 F.3d 121, 125 n. 1 (3d Cir.2002), superseded on other grounds by U.S.S.G. § 5G1.3(c) cmt. n. 3(E) (2003); see also BOP Program Statement 5880.28 § 3b (1999) (emphasizing that ad prosequendum writs do not effect a transfer to federal custody). *George v. Longley* 2012 WL 541535, 3 (C.A.3 (Pa. (C.A.3 (Pa.),2012)

Brian Lamb testified that the 720- month federal sentence was more than sufficient to "satisfy" his state charges. There is no testimony that anyone expected the Petitioner to have to serve any additional time. The end result is that the Petitioner must now serve the 240-month sentence for the charge of rape before he is released to the U.S. Marshals Service to serve the 720-month sentence on the federal charges.

A plea of guilty induced by promises or made without full understanding of the consequences will not sustain a conviction. *See Machibroda v. United States*, 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473, 477 (1962); *Kercheval v. United States*, 274 U.S. 220, 223-224, 47 S.Ct. 582, 583, 71 L.Ed. 1009, 1012 (1927.   The promise of running life sentences

concurrent has been held to render the plea involuntary (*See Coney v. Wyrick*, 532 F. 2d 94 (C.A.Mo. 1976). In this case it is clear that the Petitioner did not enter a knowing and voluntary plea to the charge of Rape because all parties, including the court,  thought that the state plea would run concurrent with the Petitioner's federal sentence.

### 2.  Invalid Judgment

The Petitioners contention in Ground Two that the Washington County Circuit Court Judgment and Commitment are invalid is without merit. The charge of Rape carries a possible penalty of 10 years to 40 years or Life. The Petitioner was sentenced to 20 years in the Arkansas Department of Correction and there is nothing facially invalid about that sentence.

### 3.  Ineffective Assistance of Counsel

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel. *U.S. Const. amend. VI.* The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' " *Strickland v. Washington*, 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (citing *McMann v. Richardson*, 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)).

A defendant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255.  *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000);  2254. *Cox v. Wyrick,*  642 F.2d 222, 226 (C.A.Mo., 1981) To establish a claim of ineffective assistance of counsel, the Defendant must satisfy the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

First, under the "deficient performance" component, he must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed [him] by the Sixth Amendment." *Strickland*, 466 U.S. at 687. That showing can be made by demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Wiggins v. Smith*, 539 U.S. 510, 522, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003)(internal citations omitted).

Second, under the "prejudice" component, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. see also, i.e. *United States v Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005)(post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense).

Also, to the extent that Petitioner's claims arise out the plea process, he must show a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. See *Strickland*, 466 U.S. at 688; *United States v. Prior*, 107 F.3d 654, 661 (8th Cir. 1997).

The Petitioner and Mr. Lamb, the state prosecutor, testified that it was Mr. Paddock's strategy to put off sentencing in state court until after sentencing in federal court and that Mr. Paddock had informed them that was the only way that "it" would work. Mr. Paddock testified that he "hoped" that would be the outcome but that he never "promised" the Petitioner that it would be the outcome. Mr. Paddock said that he or someone had done some research and determined that if he plead first in federal court and then in state court that he would serve his

time in federal custody.  He could not recall any case citation.  He acknowledged that he did not research the "custody" issue.

The Eighth Circuit has previously determined in *U.S. v. Cole* that  "[A] sentence to a term of [federal] imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). Because Cole returned to state custody after receiving his original federal sentence on December 19, 2002, instead of being committed to the custody of the Bureau of Prisons to commence service of the sentence, he did not begin to serve his federal sentence at that time.  *U.S. v. Cole*  395 F.3d 929, 931 (C.A.8 (Ark.),2005).  Had the Petitioner's attorney done proper research he would have discovered that what he was proposing both to his client, to the State Prosecuting Attorney and to the Circuit Judge was impossible.

Mr. Lamb testified that he was more than satisfied that the sentence the Petitioner received in Federal Court was adequate for the state court charge.  He also testified that he would have considered structuring the sentence in some other way had that been proposed by the Petitioner's attorney.  Had the Petitioner's attorney adequately researched the law it is clear that the deputy prosecuting attorney would have been agreeable to a plea disposition that would have accomplished the desired plea agreement.  Such action by the Petitioner's attorney was constitutionally ineffective.

### 4.  Breach of Plea Agreement

Plea agreements are contractual in nature and should be interpreted according to general contractual principles. *See United States v. DeWitt*, 366 F.3d 667, 669 (8th Cir.2004). "Due

process may be violated if there is a breach of a promise that induced a guilty plea." *United States v. Sanchez*, 508 F.3d 456, 460 (8th Cir.2007) (internal citation omitted). "The party asserting the breach-here, the Defendant-has the burden of establishing a breach." *United States v. Smith*, 429 F.3d 620, 630 (6th Cir.2005).

In this case the evidence is undisputed that the plea agreement was that the Petitioner's state court sentence was to run concurrent with his federal sentence.  The evidence is likewise undisputed that, since the State of Arkansas acquired custody of the Petitioner first, his state court sentence, as constructed, could not run concurrent with his federal sentence. The State of Arkansas has breached the plea agreement.

Having determined that the Plaintiff received Ineffective Assistance of Counsel, that his plea was not voluntary, and that the Petitioner did not receive the plea agreement that was bargained for unfortunately does not mean that the Plaintiff is entitled to the relief he is requesting.

## B.  Procedural Default

The Respondent argues that the Petitioner has procedurally defaulted his claim because he failed to exhaust his state court remedies. (ECF No. 10).

### 1.  Factual Background

The state court Amended Judgment was entered on November 17, 2008.  (Respondent's #1; ECF No. 10-7)[1]. The Petitioner had 90 days from the date of entry of Judgment to bring his

---

[1] There is no written Original Judgment.  The first written judgment was entitled Amended Judgment.

-12-

claim under Rule 37.1 for post conviction relief. (Ark. R. Crim. P. 37.2(c))[2].  A 2nd Amended

Judgment was entered on February 20, 2009 (Respondent's #2; ECF No. 10-8) but the only

addition to this judgment was the language providing that the Plaintiff sentence was "to be served

at federal penitentiary." The Petitioner filed his claim for ineffective assistance of counsel on

March 27, 2009 (ECF No. 10-9) claiming that his attorney informed him at the time of plea that

his state prison sentence would run concurrent with his federal sentence. (Id., ¶17).  The State

Court entered an order denying the Rule 37 motion on April 14, 2009 (Court's #3; ECF No. 10-

10).  The order recites in toto:

Now on this 14 day of April 2009, comes on for consideration Defendant's petition

entitled "Rule 37 Petition" and the Court finds that the petition should be and is hereby denied

and dismissed.  (Court's # 3; ECF 10-10).

Rule 37.3 of the Arkansas Rules of Criminal Procedure provides that if the petition and

the files and records of the case conclusively show that the petitioner is entitle to no relief, the

trial court shall make written findings to that effect, "specifying any parts of the files, or records

that are relied upon to sustain the court's findings". The state court did not set forth any reasons

in his order, but the trial judge sent a letter to the Petitioner on the same day informing him that

his Rule 37 motion was denied because it was not filed within 90 days of the original judgment.

(Resp. Exhibit #11; ECF No. 22).

Since the Petitioner's Rule 37 petition was filed more than 90 after the judgment was

entered the state trial lost jurisdiction of the case and correctly dismissed the motion.  The

---

[2] Under Arkansas law when the Plaintiff entered a plea of guilty he waives his right to appeal.  *See Redding v. State*, 293 Ark. 411, 738 S.W.2d 410 (1987), and A.R.Cr.P. Rule 36.1.

Arkansas Supreme Court has stated that "inasmuch as the time limitations imposed in Criminal Procedure Rule 37 are jurisdictional in nature, a circuit court cannot grant relief on an untimely petition". *Benton v. State*, 325 Ark. 246, 925 S.W.2d 401 (1996); *Hamilton v. State*, 323 Ark. 614, 918 S.W.2d 113 (1996); *Harris v. State*, 318 Ark. 599, 887 S.W.2d 514 (1994); *Maxwell v. State*, 298 Ark. 329, 767 S.W.2d 303 (1989); *Hill v. State,* 340 Ark. 248, 249, 13 S.W.3d 142, 142 - 143 (Ark.,2000).

## 2.  Failure to Exhaust State Court Remedies:

Before a state prisoner is entitled to federal habeas corpus relief, he must first exhaust his state remedies and present the habeas claim to the state court. *Pollard v. Armontrout*, 16 F.3d 295, 297 (8th Cir.1994). When reviewing a federal habeas corpus petition, we can usually only consider "those claims which the petitioner has presented to the state court in accordance with state procedural rules." *Satter v. Leapley*, 977 F.2d 1259, 1261 (8th Cir.1992).

If a prisoner has not presented his habeas claims to the state court, as is the case here,  the claims are defaulted. "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 2565, 115 L.Ed.2d 640 (1991).  *Abdullah v. Groose*  75 F.3d 408, *411 (C.A.8 (Mo.),1996).

### a.  Fundamental Miscarriage

Fundamental miscarriage generally means the conviction of an innocent person.  (*See*

-14-

*Murray v. Carrier*, 477 U.S. 478, 495-96, 106 S.Ct. 2639, 2649, 91 L.Ed.2d 397 (1986) (federal writ of habeas corpus may be granted absent a showing of cause and prejudice in an "extraordinary case" where the constitutional violation has probably resulted in the conviction of one who is actually innocent)).  The Petitioner's innocence must be established by clear and convincing evidence. (*See Whitmore v. Avery*, 26 F. 3d 1426 ,1429, (C.A. 8 (Neb.), 1994)). The Petitioner has not asserted innocence and the evidence against him was in-surmountable so it is clear that he cannot meet this test.  I will now turn to examining cause and prejudice, both of which must be shown

### b.  Prejudice

It is clear that the Petitioner has demonstrated prejudice since he will ultimately serve at least 14 additional years imprisonment that no one intended because his state court sentence will be served consecutively with his federal sentence when it was intended by all the parties to be served concurrently.

### c.  Cause for Default

The only issue is if there is cause for the default and whether the cause shall be determined from the date of the Amended Judgment (November 2008) or the 2nd Amended Judgment (February 2009).

Cause requires a showing of some impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules. *Coleman v. Thompson*, 501 U.S. 722 at 753;  See also *McCleskey v. Zant*, 499 U.S. 467, 502 (1991).

i.  Cause from Amended Judgment:

The cause for the default from the Amended Judgment in November 2008 was the failure to discover that the Petitioner's sentence was not going to run concurrent as required by the agreement.  Once the 90 day limitation ran from the judgment of the court in November 2008 there was effectively nothing the Petitioner could do because the Arkansas Appellate courts have consistently refused to recognized a Rule 37 petition that was filed beyond the time limit. *Pearson v. Norris*  52 F.3d 740, 742 -743 (C.A.8 (Ark.),1995) (At any rate, since it is undisputed that under *Burk*, 856 S.W.2d at 14-15, an attempt by Plaintiff to file a belated Rule 37 petition would be rejected as untimely by the Arkansas courts, Pearson has no realistic recourse in the Arkansas courts.)

The Petitioner was led to believe that his state sentence was going to run concurrent with his federal sentence.  His attorney, the deputy prosecuting attorney and the court had informed him that would be the case.  Even when the Petitioner was initially transported to the Arkansas Department of Corrections there would have been no way for the Petitioner to discern within the 90 day window allocated for filing a Rule 37 petition that his Arkansas sentence was not running concurrent with his federal sentence. The court even prepared a 2nd Amended Judgment to try to clarify the issue but that judgment was 1) not prepared until after the default time had run and 2) was ineffective in its intended purpose.  The barrier raised by the State constituted an impediment, external to the petitioner's defense and not fairly attributable to him, preventing him from constructing or raising his claims in state court or complying with the state's procedural rules.

ii.  Cause from 2nd Amended Judgment

The Petitioner did not file his Rule 37 motion until March 27,  2009 (ECF No. 10-9).

This filing was beyond the time of the November 2008 Amended Judgment but well within the 90 days of the February 20, 2009 2nd Amended Judgment. The trial court denied the motion as untimely on April 14, 2009 (ECF No. 10-10 and 22) stating that the motion was not filed within 90 days of the November 17, 2008 judgment. The clerks docket sheet shows that the Petitioner filed a Notice of Appeal with the circuit clerk on April 27 and June 8, 2008. There is no indication that the Petitioner then pursued his appeal to the Arkansas Court of Appeals. When question by the court as to the reason he did not follow up on his appeal the Petitioner testified that he " didn't know what to do" (R: 38:22).

The law is clear that a petitioner's pro se status, limited education, below-average intelligence, or any unfamiliarity with the intricacies of the law or legal procedure are not sufficiently external to constitute cause overcoming a procedural default. *Cornman v. Armontrout*, 959 F.2d 727, 729 (8th Cir.1992); *Stanley v. Lockhart*, 941 F.2d 707, 710 (8th Cir.1991); *McKinnon v. Lockhart*, 921 F.2d 830, 832 n.5 (8th Cir.1990); *Vasquez v. Lockhart*, 867 F.2d 1056, 1058 (8th Cir.1988); *Smittie v. Lockhart*, 843 F.2d 295, 298 (8th Cir.1988).

The Petitioner was knowledgeable concerning his rights. The record reflects that the Petitioner filed a Federal 1983 claim against the Washington County Jail in December 2007 (5:07-cv-5219) and another Federal 1983 claim against Jerome Paddock, Brian Lamb and Judge William A. Storey on March 6, 2009. (5:09-cv-05046). The evidence of the Petitioner's prompt filings in federal court is some indication of his knowledge and access to legal recourse.

The fact that the Petitioner choose to pursue civil actions in Federal court rather than to appeal his Rule 37 may have been an error in judgment but it was not an impediment, external to the petitioner's defense and the error is fairly attributable to him.

-17-

In this particular case if the court considers the date of final judgment to be November 17, 2008 the Petitioner has cause for the default, while if the court considers the final judgment date to be February 20, 2009 he does not.

The government has not argued that the court should consider any date other than the November 17, 2008 date. (ECF No. 26, p. 6).  The Arkansas Supreme Court has consistently held that a trial court loses jurisdiction to modify or amend an original sentence once a valid sentence is put into execution.  *Clampet v. State*,  352 Ark. 176, 179, 99 S.W.3d 414, 416 (Ark.,2003) A sentence is put into execution when a trial court issues a judgment of conviction or a commitment order. Id.; *Bagwell v. State*, 346 Ark. 18, 53 S.W.3d 520 (2001). It is clear that the Petitioner's sentence was put into execution at the time of plea on November 17, 2008 and the court's authority to amend the sentence ended after 90 days.  Since the 2nd Amended Judgment was not entered for 95 days it was without legal effect and was only entered for the purpose of trying to facilitate the ability of the Petitioner to sever his time in a federal facility.

The court therefore finds that cause and prejudice should be determined from the date of the Amended Judgment of November 17, 2008 and, therefore, cause and prejudice does exist to excuse the Procedural Default of the Petitioner.  The Petitioner still must explain why his petition should not be barred because of the one year statute of limitations.

## C. Limitations

### 1. Statutory Provision

The Antiterrorism and Effective Death Penalty Act (AEDPA), Pub.L. 104-132, 110 Stat. 1214 (1996), established a one year statute of limitations for federal habeas corpus petitions brought by state prisoners. The limitation period shall run from the latest of--

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence. See 28 U.S.C. § 2244(d)(1).

## 2.  Factual Background

The Petitioner entered a plea of guilty and, as stated above, the state court Amended Judgment was entered on November 17, 2008.  Under Arkansas law when the Plaintiff entered a plea of guilty he waives his right to appeal.  *See Redding v. State*, 293 Ark. 411, 738 S.W.2d 410 (1987), and A.R.Cr.P. Rule 36.1. The Petitioner had 90 days from the date of entry of Judgment to bring his claim under Rule 37.1 for post conviction relief. (Ark. R. Crim. P. 37.2(c))[3].

The one-year limitation period is tolled while a "properly filed" application for post-conviction relief is pending in state court.  See § 2244(d)(2); *Johnson v. Hobbs*, 678 F.3d 607 (C.A. 8th Cir. (Ark.).   The Petitioner filed his claim for ineffective assistance of counsel on March 27, 2009 (ECF No. 10-9) claiming that his attorney informed him at the time of plea that his state prison sentence would run concurrent with his federal sentence. (Id., ¶17). The Rule 37 petition was therefore not "properly filed" and the State Court entered an order denying the Rule

---

[3] Under Arkansas law when the Plaintiff entered a plea of guilty he waives his right to appeal.  *See Redding v. State*, 293 Ark. 411, 738 S.W.2d 410 (1987), and A.R.Cr.P. Rule 36.1.

37 motion on April 14, 2009 (Court's #3; ECF No. 10-10).

The Arkansas Supreme Court has stated that "inasmuch as the time limitations imposed in Criminal Procedure Rule 37 are jurisdictional in nature, a circuit court cannot grant relief on an untimely petition". *Benton v. State*, 325 Ark. 246, 925 S.W.2d 401 (1996). The judgment became final therefor on February 16, 2009 and the Petition was not filed until June 10, 2011.

Even if the court were to consider the time to run from the 2nd Amended Judgment the motion would not be timely. While a 2nd Amended Judgment was entered on February 20, 2009 (Respondent's #2; ECF No. 10-8) the only addition to this judgment was the language providing that the Plaintiff sentence was "to be served at federal penitentiary."  Regardless, the state court entered an order on April 14, 2009 denying the Rule 37.  The Petitioner had 30 days within which to file a Notice of Appeal (Ark. R. App. Proc., Rule 2(a)(4) which the Petitioner did on April 27, 2009 (ECF No. 10-11, p. 2).  The Petitioner then had 90 days to file the record with the clerk of the appellate court (Ark. R. App. Proc., Rule (4)(b).  This the Petitioner did not do and that would have arguably made the 2nd Amended Judgment date final for SOL purposed on July 19, 2009.  Whether the court considers the November 17, 2008 date or the April 14, 2009 date makes no difference since the Petition did not file his federal habeas action until June 10, 2011.

Even if the court considered the date to be extended because of an unknown factual predicate it would not help the Petitioner. The federal authorities filed a detainer on the Petitioner on February 2, 2009 (ECF No. 2, p. 5) however the state court judge sent a letter to the Petitioner on February 19, 2009 (Id., p. 10) and executed the 2nd Amended Judgment on February 20, 2009 (Id., p. 11-12) designating that his "240 months to be served at federal penitentiary".   However, by the time the state trial judge made his ruling in April 2009, denying the Rule 37 petition, the

-20-

Petitioner knew that he was not going to get any relief from the state trial court. In July 2009 the Plaintiff was informed by the U.S. Marshals Service that if the state has "original or primary jurisdiction over an inmate, then the inmate must conclude the state sentence PRIOR to incarceration within the federal system." (See ECF No. 2, p. 22).  By July 2009 the Petitioner knew the factual predicate existed that his sentence in state court was not going to run concurrent with his federal sentence.  Even extending the running of the statute of limitations from July of 2009 will not satisfy the limitations requirement.

By any date the court can consider the Petitioner's habeas petition is beyond the statue of limitations.

### 3.  Waiver

The State of Arkansas did not raise the Statute of Limitations defense in its Response (ECF No. 10) but relied exclusively on the Petition's failure to exhaust his State court remedies under 28 U.S.C. §2254(b)(1)(A).  Id., p. 5.  "Ordinarily in civil litigation, a statutory time limitation is forfeited if not raised in a defendant's answer or in an amendment thereto." *Day v. McDonough*, 547 U.S. 198, 202, 126 S.Ct. 1675, 164 L.Ed.2d 376.

In Day, the Court affirmed a federal district court's authority to consider a forfeited habeas defense when extraordinary circumstances so warrant. 547 U.S., at 201, 126 S.Ct. 1675. The State in Day, having miscalculated a time span, erroneously informed the District Court that Day's habeas petition was timely. Apprised of the error by a Magistrate Judge, the District Court, sua sponte, dismissed the petition as untimely. This Court affirmed, holding that "district courts are permitted, but not obliged, to consider, sua sponte, the timeliness of a state prisoner's habeas petition." Id., at 209, 126 S.Ct. 1675. Such leeway was appropriate, the Court again reasoned,

because AEDPA's statute of limitations, like the exhaustion doctrine, "implicat[es] values beyond the concerns of the parties." Id., at 205, 126 S.Ct. 1675.

Petitioner contends the State waived its SOL defense when it failed to raise the issue in its brief, citing F.R.C.P. 8(c) and 12(b) for the proposition that SOL is an affirmative defense that must be asserted in the responsive pleadings.  (ECF No. 27 at 1-2). The State reasons that while the defense was not affirmatively raised in the initial response, the State has not forfeited the right to raise one at a later time.  (ECF No. 26 at 2, FN 1 (citing *Day v. McConough*, 547 U.S. 198, 207-08 (2006) and *Boston v. Weber*, 525 F.3d 622, 626-27 (8th Cir. 2008), for the proposition that if the failure to raise the defense is inadvertent, then it fails to rise to the level of knowing and voluntary (in)action required to constitute waiver)).

The Supreme Court recently upheld the narrow exception allowed in *Day*, clarifying "the Court declines to adopt an absolute rule barring a court of appeals from raising, on its own motion, a forfeited timeliness defense."  *Wood v. Milyard*, 132 S.Ct. 1826, 1834 (2012).  "Our precedent establishes that a court *may* consider a statute of limitations or other threshold bar the State failed to raise in answering a habeas petition."  *Wood*, 132 S.Ct. at 1830 (citing *Granberry v. Greer*, 107 S.Ct. 1671 (1987) (exhaustion defense) and *Day*, 126 S.Ct. 1675 (2006) (statute of limitations defense)).  Because waiver requires an "intentional relinquishment or abandonment of a known right," the Court requires more than failure to raise to foreclose the State from the SOL defense.  *Wood*, 132 S.Ct. at 1835 (citing *Kontrick v. Ryan,* 124 S.Ct. 906 (2004) (quoting *United States v. Olano*, 113 S.Ct. 1770 (1993)).

The State argues that it was not aware of the fact that the Petitioner's Rule 37 motion was untimely until they received a copy of the letter from the state court trial judge stating his reasons

for dismissal of the Rule 37 motion. (ECF No. 26, p. 2, FN 1)[4].  This argument is consistent with the State's position in their original response where they assumed that the judge's April 14th letter pertained to some reason other than the timeliness issue. (ECF No. 10, p. 5 FN 2).  The State clearly stated that the "alleged untimeliness (by Petitioner) of Chappell's Rule 37 petition is not apparent to the respondent". (Id.).

The court finds that the State's failure to raise the SOL defense was not an intentional relinquishment or abandonment of a known right but an oversight and was not effectively waived by the State of Arkansas.

### 3.  Equitable Tolling

A prisoner whose petition is belatedly filed may take advantage of equitable tolling where extraordinary circumstances beyond his control make it impossible for him to file a petition on time or when the action of the respondent lulled him into inaction. *Jihad v. Hvass*, 267 F.3d 803, 805 (8thCir. 2001).

In general, neither a plaintiff's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits equitable tolling. *Turner v. Johnson*, 177F.3d 390, 392 (5th Cir. 1999). See *Cross-Bey v. Gammon*, 322 F.3d 1012, 1015-16 (8th Cir. 2003); *Kreutzer v. Bowersox*, 231 F.3d 460, 463 (8th Cir. 2000, cert. denied, 534 U.S. 863 (2001) (equitable tolling not warranted in case of unrepresented prisoner alleging lack of legal knowledge or legal resources).

On March 6, 2009, before the Petitioner received notification from the Bureau of Prisons

---

[4] At the conclusion of the hearing the court asked the State to secure the letter from Judge Story to the Petitioner dated April 14, 2009. That letter was produced post hearing on June 4, 2012. (ECF No. 22).

that his federal sentence would have to be served consecutively to his state court sentence, the Petitioner filed a 1983 claim against his defense attorney, the state prosecutor, and the state court judge  (5:09-cv-05046) alleging the same claims asserted in his present action. In his prayer for relief in his 1983 action the Petitioner stated "I want to be release to my detainer." (Id., p. 4) A Report and Recommendation was entered by the undersigned on April 9, 2009 recommending that the complaint be dismissed and the R&R contained a specific explanation to the Petitioner that the relief he was seeking had to be presented in a habeas action. (Id., p. 5).  The District Court adopted the R&R and entered an Order dismissing the Petitioner's 1983 claim on July 8, 2009.  Even if the Petitioner's judgment date had been considered at the earliest time on November 2008 he still would have had ample opportunity to file a timely habeas petition.

If the court considers the action of the 2nd Amended Judgment as some behavior on the state's part that lulled the petitioner into inaction it is clear that by July 2009 he was put on notice that state could not complete the plea agreement as anticipated by the parties.  In spite of being advised by the court specifically in July 2009 that he would have to institute a habeas petition he did not do so until June 2011.  There is no basis for equitable tolling under the facts of the present case.

### III.  Conclusion

Based upon the forgoing I recommend that the instant motion, filed under 28 U.S.C. §2254 be dismissed with prejudice.

**The parties have fourteen days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. Section 636(b)(1).  The failure to file timely written objections may result in waiver of the right to appeal questions of fact.  The**

parties are reminded that objections must be both timely and specific to trigger de novo

review by the district court.

Dated this 6th[th] day of July 2012


/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE